STATE of Missouri, Respondent,

v.

Joseph M. ZIEGLER, Appellant.

STATE of Missouri, Respondent,

v.

Richard C. ZIEGLER, Appellant.

Nos. 14536, 14646.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 20, 1986.

Sidney T. Pearson III, Pearson & Carter, St. James, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, John M. Morris, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendants Richard Ziegler and Joseph Ziegler guilty of burglary in the second degree, stealing, and arson. Richard Ziegler was sentenced, as a prior offender, (§ 558.016.2),[1] to consecutive terms of imprisonment totaling 15 years. Joseph Ziegler was sentenced, as a persistent offender, (§ 558.016.3), to consecutive terms of imprisonment totaling 25 years. Defendants appeal.

Defendants do not challenge the sufficiency of the evidence to support their conviction. On this appeal they claim that the trial court erred in the following respects: (1) receiving into evidence, over defendants' objection, incriminating statements attributed to defendants; (2) permitting the state to introduce the "perjured testimony" of Morgan Tucker; (3) treating Richard Ziegler as a prior offender and Joseph Ziegler as a persistent offender because their re-spective prior convictions did not support that treatment.

Viewed favorably to the verdict, the state's evidence showed that at approximately 3 a.m. August 10, 1984, defendants and their nephew Morgan Tucker went to the home of Louis Falloon which was located on Highway FF six miles south of Sullivan in Crawford County. The Falloon family was away on a short vacation. Richard Ziegler cut the telephone wires to the Falloon house. Joseph Ziegler then kicked open the locked back door and the three men entered the house. They then went outside and picked some watermelons. The two defendants decided to reenter the house but Morgan Tucker refused to do so and left. The two defendants reentered the house and stole various items, including an electric alarm clock, a ring of school keys, and packages of meat and frozen pies which were in a deep freeze. They also stole a 12-volt battery from Falloon's pickup truck, together with two truck tires and several watermelons. The stolen items had a combined value exceeding $180.

Defendants placed a candle in a slit mattress on a bed in the front bedroom and lit the candle. They also placed a candle in a bed in the back bedroom. The candle in the front bedroom caused a fire resulting in considerable damage to the house, but the candle in the back bedroom went out.

Approximately 45 minutes after defendants had made the second entry into the house, Morgan returned and picked them up. Defendants had with them the clock, the keys, and the meat, and, inferentially, the other stolen items. At approximately 1 p.m. that afternoon the defendants attended a family barbecue where they cooked some of the stolen meat.

State's witness Louis Falloon described the damage to the house, enumerated the stolen articles, and testified with respect to their value. William Frawley, a fire marshal, testified that the fire in the house was "incendiary in origin—a set fire."

1. All references to statutes are to RSMo 1978, V.A.M.S.

Law officer Ray Vance, a state's witness, testified that he investigated the crimes at the Falloon home on August 11, and on that date obtained a search warrant to search the Ziegler residence which was located near the city limits of Sullivan, approximately 3.3 miles from the Falloon home. Search of the deep freeze in the Ziegler home resulted in finding packages of frozen meat and pies which bore the name "Falloon." While officer Vance and other officers were conducting the search, Vance saw a vehicle, driven by defendant Richard Ziegler and occupied by Ziegler's wife Patricia and Ziegler's nephew George Tucker, drive by the Ziegler home and then continue north on the highway. Vance and another officer got in a patrol car and pursued the Ziegler vehicle. Ziegler drove his vehicle about .2 of a mile north on the highway, then drove to the left side of the road, stopped, got out, "came around behind the vehicle and ran across a field to the east." Patricia Ziegler and George Tucker remained in the car.

George Tucker, a state's witness, testified that he attended the afternoon barbecue, that defendants brought the meat to the barbecue, and that defendant Richard Ziegler told the witness that "he and Joe had broken into a house and that they took the meat and some watermelons and a digital alarm clock and a little bit of money." Richard Ziegler also told the witness that they had "set the house on fire." The witness also described the conduct of Richard Ziegler, on the afternoon of August 11, of jumping out of the car while pursued by officer Vance, and stated that Richard "took off running across the field and into the woods."

Morgan Tucker, a state's witness, testified that he accompanied the two defendants to the Falloon house on the night of the offenses. He said that Richard Ziegler cut the telephone wires, Joseph Ziegler kicked the back door open, and the three men entered the Falloon house. He also said that the defendants reentered the house but he would not do so. The witness said: "I went up the road and parked and came back and picked them up in about 45

minutes. It was pretty close to 3 a.m. They were in the road ditch on the opposite side from the house. Richard and Joseph had a green trash can and had a few of the items stuck down in it. One was a key ring, and what appeared to be packages of meat. Joseph got in on the passenger's side and Richard got in and drove back to my grandmother's. Joseph threw the ring of keys out the window on the way to Grandmother's."

On cross-examination by defense counsel the witness admitted that he had lied at the preliminary hearing. The lie consisted of falsifying the degree to which the witness himself had participated in the offenses. "At the preliminary hearing," said the witness, "I told the court that I had not been at that home and broken into it. That was a lie under oath.... My present statement differs from my former statement in that I am now admitting that I was involved. All along I said that Joseph and Richard were involved.... The only thing that changed now is that I am willing to admit I was there. Before I stated that I stayed across the road at the rock quarry. I did not actually stay over there. I went over to the house. Then I went back to the rock quarry and [defendants] went to the house and I went up the road and parked and waited.... As far as what Joseph and Richard did, my story has not changed a bit."

Defendants' first point is that the trial court erred in receiving into evidence, over defendants' objection, the testimony of George Tucker concerning the statements made to him by Richard Ziegler to the effect that the defendants had broken into the Falloon house, stolen the various articles, and set the house on fire. Defendants also claim that the court erred in receiving into evidence the testimony of Morgan Tucker that "Richard and Joe told me they set the house on fire by putting a candle under the bed or in a mattress or something like that."

Citing *Kansas City v. Verstraete*, 481 S.W.2d 615 (Mo.App.1972), defendants ar-

gue that when corpus delicti has not been sufficiently proven, an uncorroborated extrajudicial confession of guilt cannot be received as evidence tending to show guilt. This court agrees with the foregoing principle enunciated in that case but finds it inapplicable to the case at bar.

Resort to the argument portion of defendants' brief indicates that what defendants are arguing is that Morgan Tucker's testimony that defendants told him they had set the fire should not have been received because Morgan did not see them set the fire. Defendants' brief states that the corpus delicti of the crime of arson includes that of "criminal agency."

Defendants were charged with arson in the second degree, § 569.050, which, in pertinent part, reads: "1. A person commits the crime of arson in the second degree when he knowingly damages a building or inhabitable structure by setting a fire...." An "inhabitable structure" includes a structure "which is used for overnight accommodation of persons." Any such structure is "inhabitable" regardless of whether a person is actually present. § 569.-010(2)(c).

The testimony of the fire marshal was to the effect that the fire to the Falloon house was "incendiary in origin—a set fire." The candle found in the bed in the back bedroom certainly supported that opinion. Defendants do not dispute the fact that the Falloon house was an inhabitable structure and that it was damaged. Defendants argue that no witness testified to seeing *defendants* set the fire and thus there was no proof of corpus delicti.

■ The flaw in defendants' argument is that proof of the corpus delicti does not require proof of the criminal agency of the *defendant* but merely proof of criminal agency generally. *State v. Worley*, 375 S.W.2d 44, 46[2] (Mo.1964). Corpus delicti consists of two elements: "(1) proof, direct or circumstantial, that the specific loss or injury charged occurred, and (2) *someone's* criminality as the cause of the loss or injury." *State v. Johnston*, 670 S.W.2d 552, 554 (Mo.App.1984). (Emphasis added.)

■ The state's evidence showed that arson had been committed by *someone* on the date and in the manner charged in the information. That evidence, coupled with the oral statements of defendants that *they* had set the fire, was sufficient to support the convictions. " 'Once the corpus delicti was shown by proof other than defendant's confession or admission, defendant's oral admissions were admissible and, if believed, completed the case against him.' *State v. Herman*, 280 S.W.2d 44, 46[2] (Mo.1955)." *State v. Harris*, 594 S.W.2d 658, 662 (Mo.App.1980). See also *State v. Shive*, 624 S.W.2d 136, 143[8] (Mo.App. 1981). Defendants' first point has no merit.

Defendants' second point is that the trial court erred in failing to grant defendants a new trial because the state, in calling Morgan Tucker as a witness, "allowed perjured testimony to be presented to the court because Morgan Tucker's testimony at the trial was false, the prosecutor knew or should have known that said testimony was false, and the conviction was obtained on account of the perjured testimony."

Defendants point out that Morgan Tucker, during cross-examination by defense counsel, admitted that portions of his testimony at the preliminary hearing were lies. Defendants say, "Counsel for the state was well aware of witness Morgan Tucker's propensity to lie, even under oath. Counsel for the state was also well aware that Morgan Tucker was probably lying at the trial of this cause."

Defendants cite *State v. Harris*, 428 S.W.2d 497 (Mo.1968), for the proposition that where an accused is found guilty of a crime on the basis of false testimony, and the court satisfies itself that perjury has been committed and that an improper verdict has been thereby occasioned, the court is under a duty to grant a new trial. Again this court does not question the soundness of the principle but finds it inapplicable to the case at bar.

In *State v. Eiland*, 534 S.W.2d 814 (Mo. App.1976), state's witness Jones testified

that shots were fired by the defendant from the back seat of a stopped Oldsmobile. The defendant showed that Jones had told the police and a grand jury that the shots were fired from a moving Monte Carlo automobile. Defendant challenged the testimony of Jones "as conflicting and without probative value." Rejecting the challenge, the court of appeals said, at p. 816:

> "Inconsistencies such as these affect the weight, not the admissibility or sufficiency, of the evidence. It is for the jury to determine whether the witness' testimony at trial is credible in the light of the inconsistencies. State v. Spinks, 344 Mo. 105, 125 S.W.2d 60 (1939); State v. Austin, 496 S.W.2d 799 (Mo. banc 1973), cert. den. 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 336."

In *State v. Gentry,* 329 Mo. 282, 44 S.W.2d 27 (1931), the court said, 44 S.W.2d at p. 31:

> "It is claimed that a case was not made out because the principal witnesses against the defendant were Bryan and Barrett whose character and whose confessions of previous falsehoods about the same thoroughly discredited them. It is true they were contradicted by their former statements, sworn and unsworn. It was a matter for the jury to determine at which time they told the truth."

To similar effect see *State v. Collins,* 520 S.W.2d 155, 157[1, 2] (Mo.App.1975).

■ At the trial Morgan Tucker admitted that portions of his testimony at the preliminary hearing were lies. That fact did not destroy the probative value of his trial testimony. The weight to be given that testimony was a matter for the jury to determine. Defendants have made no showing that Morgan Tucker's trial testimony was perjury. They showed only that he admitted perjuring himself on the prior occasion. Defendants' second point has no merit.

Defendants' third point is that the trial court erred in using the respective prior pleas of each of them for the purpose of finding Richard Ziegler to be a prior of-fender and Joseph Ziegler to be a persistent offender because the prior pleas resulted only in a suspended imposition of sentence and "a suspended imposition of sentence is not a conviction under the law of the state of Missouri and should not be used for the purpose of enhancing a sentence."

Section 558.016, as amended in 1981, reads, in pertinent part:

> "2. A 'prior offender' is one who has pleaded guilty to or has been found guilty of one felony.
>
> 3. A 'persistent offender' is one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times."

The trial court found Richard Ziegler to be a prior offender on the basis that he had entered a plea of guilty on May 17, 1983, "to the class C felony offense of stealing in Franklin County, Missouri." The trial court also found Joseph Ziegler to be a persistent offender on the basis of two felony guilty pleas entered in Washington County in 1979 and two felony guilty pleas entered in Franklin County in 1979.

■ Even if imposition of sentence is suspended, finding a defendant guilty of a felony "confers upon him the 'prior offender' status under § 558.016 RSMo Cum. Supp.1983." *State v. Lynch,* 679 S.W.2d 858, 861[6] (Mo. banc 1984). Since suspension of imposition of sentence does not impair the use of a plea of guilty to a felony, or a finding of guilty of a felony, for the purpose of determining status as a prior offender, it does not impair the use of such a plea or finding for the purpose of determining status as a persistent offender.

■ Although the prior pleas of Joseph Ziegler were entered in 1979, prior to the 1981 amendment of § 558.016, the trial court properly considered those pleas in determining his status as a persistent offender because the instant offenses were committed after the 1981 amendment took effect. *State v. LaPlant,* 673 S.W.2d 782, 785[5] (Mo. banc 1984). Defendant Joseph

**956**

Ziegler makes no claim that his prior pleas did not involve "two or more felonies committed at different times." Defendants' third point has no merit.

The judgments are affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.